*1062 OPINION.
Matthews :
The main issues for determination are (1) whether the Farmers Educational and Cooperative State. Union of Nebraska is an exempt corporation under the provisions of the Revenue Acts of 1916, 1918, and 1921; (2) whether the Farmers Union State Exchange is an exempt corporation under the provisions of the Revenue Acts of 1916 and 1918, and, if not, (3) whether it is taxable on the undistributed savings of 1917 and 1918; and (4) whether the period of limitation for 1918 had expired prior to the date on which the notice of deficiency for that year was mailed.
If the State Union is an exempt corporation, that disposes of all issues raised in Docket Nos. 10596, 27194, and 31748, and some of the issues raised in Docket No. 18105. We will dispose of this issue first.
The State Union earnestly contends that it is entitled to exemption for the years involved under the following provisions of the Revenue Acts of 1916, 1918, and 1921:
Revenue Act of 1916:
Sec. 11. (a) That there shall not be taxed under this title any income received by any—
First. Labor, agricultural, or horticultural organization;
* * * * * ❖ #
Eleventh. Farmers’, fruit growers’, o-r like association, organized and operated as a sales agent for the purpose of marketing the products of its members and turning back to them the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them.
Revenue Act of 1918:
*1063 Seo. 281. That the following organizations shall be exempt from taxation under this title—
(I) Labor, agricultural or horticultural organizations;
* * * * * * *
(II) Farmers’, fruit growers’, or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of • sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them.
Kevenue Act of 1921:
Seo. 231. That the following organizations shall be exempt from taxation under this title—
(I) Labor, agricultural, or horticultural organizations;
* * * * * * *
(II) Farmers’, fruit growers’, or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of sales, less'the necessary selling expenses, on the basis of the quantity of produce furnished by them; or organized and operated as purchasing agents for the purpose of purchasing supplies and equipment for the use of members and turning over such supplies and equipment to such members at actual cost, plus necessary expenses.
The State Union is a division of the Farmers Educational and Cooperative Union of America, commonly called the. National Farmers Union. It was duly chartered by that body and complied with the statutes of Nebraska governing the organization of cooperative societies, and qualified as a cooperative company under the laws of Nebraska on July- 13, 1914. The pertinent provisions of the Nebraska statutes in force at that time are quoted in the margin.[1]
*1064 In our opinion, the State Union is both an agricultural organization and a farmers’ cooperative organization, under the provisions quoted above, and is exempt from income and profits tax.
Article 73 of Begulations 33, entitled “ Labor, agricultural and horticultural organisations. — ”, provides in part:
Agricultural or horticultural organizations, which, are exempt under this title, do not include those corporations engaged in growing agricultural or horticultural products, raising live stock or similar products for profit, but will include only those organizations which, having no net income inuring to the benefit of their members, are educational or instructive in character, and which have for their purpose the betterment of the conditions of those engaged in these pursuits, the improvement of the grade of their products, and the encouragement and promotion of those industries to a higher degree of efficiency. (T.D. 2090.)
The same provisions appear- in all the later regulations.
The State Union was not engaged in growing agricultural products or raising livestock; it had no net income inuring to the benefit of its members; it was educational and instructive in character, and had' for its purpose the betterment of the condition of the farmers of Nebraska, the improvement of the grade of their products, and the .encouragement and promotion of agricultural industries to a higher degree of efficiency.
Its purposes, as set forth in its constitution, are set forth in our findings of fact. The facts also show how diligently and with what success it carried out the purposes for which it was organized.
One of the purposes stated is “ to assist our members in buying and selling.” This would result in the betterment of the condition of the farmer by eliminating the middleman’s profits on the farm products sold and on the supplier purchased by the farmer. The cooperative purchasing of supplies in the larger market at Omaha offered the farmers savings in the purchase of their supplies. Hence the activities of the Exchange were started. The sale of their livestock in the large stockyard centers by their own organization offered the shippers the way to save for themselves a large part of the commissions charged by the old line commission houses. Hence the establishment of the livestock commissions.
Although the livestock commissions were operated and originally financed by the Union for its members, no part of the undistributed earnings of the commissions inured to the benefit of the Union.
If the question before us were whether the three livestock commissions are such cooperative sales agents as are exempt from tax under the statutes, they would meet the test prescribed. From about 82 to 90 percent of the net earnings of the livestock commissions was distributed to the patrons each year on a proportionate basis. The undistributed earnings of the livestock commissions *1065 were small in proportion to the business done and were certainly no more than were necessary to be reserved for the exigencies of the business. The business with nonmembers was negligible, and upon the nonmember patron becoming a member he received his patronage dividend. The retention of such a small proportion of the savings would not be sufficient to destroy the exempt status of a cooperative sales agent. The operation of the commissions by the Union did not have the effect of taking the Union out of the exempt class.
The Farmers Exchange was incorporated under the statutes of Nebraska governing cooperative corporations. The stock of the Exchange was held by the Union as trustee for its members. No part of the net income of the Exchange inured or could inure to the benefit of the stockholder. It was not conducted for profit, but for the benefit of the members of the State Union. We are of the opinion that the holding of the stock of the Farmers Exchange by the Union, as trustee for the members of the Union, is not sufficient to destroy its classification as an agricultural organization, within the meaning of the several revenue acts.
But if it should be thought that because of these activities the State Union is not an agricultural organization within the meaning of the statute, it is'clearly a farmers’ cooperative association, which is exempt from tax under subdivision (11). It is a cooperative organization under the Nebraska statutes. No part of the savings of the Farmers Exchange inured to it as a stockholder. It held the stock of the Exchange and operated livestock commissions for the benefit of its members. The greater part of the savings of the livestock commissions was returned to the shippers as patronage dividends, the amount retained being no more than a necessary reserve for the exigencies of the business of the commissions, and such amount did not inure to the benefit of the Union.
We hold, therefore, that the State Union is exempt from income tax under the provisions of the Revenue Acts of 1916,1918, and 1921. This disposes of all issues raised with respect to the years 1919, 1920, 1921, 1922, and 1923. It also disposes of the issues raised by the Farmers Exchange for 1917 and 1918 with respect to including in income taxable to the Exchange, the fees, dues, and undistributed earnings of the livestock commissions.
We shall next consider whether the Farmers Exchange is an exempt corporation.
The Farmers Exchange, as stated above, was organized under the Cooperative Statutes of Nebraska. It was both a cooperative sales agent and a cooperative purchasing agent for the members of the Union. The revenue acts in effect in the years 1917 and 1918 do not specifically mention farmers’ purchasing agents as being in the *1066 exempt class. Petitioner argues that the inclusion of purchasing agents in the Revenue Act of 1921 in no way indicates that farmer purchasing organizations were not exempt from tax under prior acts and that the inclusion of such organizations in the 1921 Act was the adaptation of the law specifically to a practice already sanctioned.
The Board heretofore had occasion to consider arguments of this nature in Riverdale Cooperative Creamery Assn., 18 B.T.A. 1159; aff'd., 48 Fed. (2d) 711, and held contrary to petitioner’s contention. On the authority of this decision we hold, therefore, that the Farmers Exchange is not an exempt corporation under the Revenue Acts of 1916 and 1918.
Although cooperative purchasing agencies are not exempt from tax and are required to file returns under the Revenue Acts of 1916 and 1918, the regulations under such acts permit a deduction of the amount of patronage dividends' paid. It has also been held that a deduction is allowable where there is a definite liability to make such payment, Home Builders Shipping Assn., 8 B.T.A. 903; Anamosa Farmers Creamery Co., 13 B.T.A. 907; Farmers’ Union Cooperative Assn., 13 B.T.A. 969. The question then is whether the Farmers Exchange was under such a definite liability to pay the savings for 1917 and 1918 to its patrons as to permit their deduction.
The Exchange was a nonprofit organization conducted for the benefit of the members of the State Union. The bylaws of the Exchange, if any were ever adopted, were not introduced in evidence. The provision in the articles of incorporation that the bylaws shall provide for the distribution of earnings in whole or in part, on the basis of the business done with the members of the Union, may be considered to have the same force as would a provision to like effect in the bylaws. We are of the opinion, however, that the charter provision alone cannot be construed as creating in each year a definite liability to pay the entire savings of that year, or any particular part thereof, to the patrons. In order to make the liability sufficiently definite to permit a deduction of any amount, there should have been some declaration or act on the part of the directors with respect to payment of patronage dividends. In the absence of evidence that any such declaration or act was made or done, we hold that the Exchange is not entitled to any deduction from income for 1917 and 1918 on account of patronage dividends which were not declared or paid.
We turn now to the question of the expiration of the period of limitation on the assessment and collection of the deficiency determined for 1918.
The period for assessment and collection of taxes for 1918 started to run on June 16, 1919, when the tax return was filed, and under *1067 the provisions of section 250 (d) of the Revenue Act of 1918 the respondent had five years from that date to assess and collect any additional tax found to be due. On January 15, 1923, the Farmers Exchange executed an unlimited waiver extending the period for the assessment and collection of taxes for 1917 and 1918, “ irrespective of any period of limitations ”, and under date of June 9, 1924, an income and profits tax waiver was executed by the Farmers Exchange which relates to taxes for 1918 and which recites: “ This waiver is in effect from the" date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made for the year or years mentioned.”
It is the petitioner’s position that the five-year period prescribed by the statute would have expired on June 16, 1924, if no waivers had been executed, and that the waiver dated June 9, 1924, extended the statutory period for one year, or until June 16, 1925. The respondent is contending that the unlimited waiver dated January 15, 1923, covered the year 1918 as well as 1917 and that the respondent had a reasonable time within which to act thereunder. The notice of deficiency for 1918 was mailed on May 4, 1926. The respondent argues that the period of 22 months and 18 days which elapsed between the expiration of the original statutory period and the mailing of the notice of deficiency amounts to a reasonable time and that the respondent’s determination is timely,, in view of the execution of the above described waivers.
If the second waiver had not been executed it would be necessary to decide only whether the notice of deficiency was mailed prior to the expiration of the statutory period of limitation as extended by the unlimited waiver. An unlimited waiver does not suspend the running of the statute forever, but only for a reasonable time or until termination by either party upon reasonable notice. As stated, the original statutory period of limitation for the assessment and collection of taxes for 1918 would have expired on June 16, 1924, which is five years after the return was filed. But prior thereto, on June 9, 1924, the second waiver was executed, which extended the period for one year after the expiration of the statutory period of limitation, “ or the statutory period of limitation as extended by any waivers already on file with the Bureau.” The only waiver already on file being the unlimited waiver, the question arises whether that unlimited waiver may. be considered to have given the respondent a reasonable time after the expiration of the statutory period to assess and collect, to which may be added the additional year granted by the second waiver. We are of the opinion that this *1068 question must be answered in the negative. The two waivers must be construed together. Stern Bros. & Co., 17 B.T.A. 848, aff'd., 51 Fed. (2d) 1042. To say that the first waiver remained in effect after the execution of the second waiver, under the circumstances set out, would be equivalent to brushing aside the meaning of the latter waiver. It must have been intended that the second waiver should be substituted for the unlimited waiver. Its execution on June 9, 1924, before the unlimited waiver became effective to extend the statutory period, was sufficient "to constitute a reasonable notice that the unlimited waiver was terminated as of that date. Ethel D. Co., 27 B.T.A. 25; aff'd., 10 Fed. (2d) 761. We hold, therefore, that the statute of limitations governing the assessment and collection of taxes for 1918 had expired prior to the mailing of the notice of deficiency on May 4, 1926, and the respondent was barred from making any further determination with respect to petitioner’s tax liability for that year.
Reviewed by the Board.

Judgment will be entered u/nder Rule 50 in Docket No. 18105. Judgment of no- deficiency will be entered in Docket Nos. 10596, B7194-, and 3171f8.

 Revised statutes oí the State oí Nebraska (1913) Part II, ch. 14, Art. XV—
733 See. 185 “ Co-operative company ” defined,.- — For the purpose of this article, the words “ co-operative company, corporation or association ” are defined to mean a company, corporation or association which authorizes the distribution of its earnings in part, or wholly, on the basis of, or in proportion to the amount o¡£ property bought from or sold to members, or ol labor performed, or other service rendered to the corporation : Provided, nothing, in this article shall be construed as in any way conflicting with or repealing any law relating to building and loan associations or installment investment companies. (1911 p. 195 ; Ann. 4271; Comp. 2241a.)
734 Sec. 186. Sow incorporated. — Any number of persons, not less.than twenty-five, may be associated and incorporated for the co-operative transaction of any lawful business, including the construction of canals, railways, irrigation ditches, bridges, and other works of internal improvements. (1911 p. 196; Ann. 4272; Comp. 2241b.)
735. See. 187. Corporate powers. — Every co-operative corporation as such has power:
First — To have succession by its corporate name;
Second — to sue and to be sued, to complain and defend in courts of law and equity;
Third — to make and to use a common seal, and alter same at pleasure;
Fourth — to hold personal estate, and all such real estate as many be necessary for the legitimate business of the corporation;
Fifth — to regulate and limit the right of stockholders to transfer their stock;
Sixth — to appoint such subordinate officers and agents as the business of the corporation shall require, and to allow them suitable compensation therefor;
Seventh — to make by-laws for the management of its affairs, and to provide therein the terms and limitations of stock ownership, and for the distribution of its earnings. (1911 p. 196 ; Ann. 4273 ; Comp. 2241c.)
736 Sec. 188. Powers vested without Toeing mentioned. — The powers enumerated ■ in the preceding section shall vest in every co-operative corporation in this state whether the same be formed without, or by legislative enactment, although they may not be specified in its charter or in its articles of association. (1911 p. 196; Ann. 4273; Comp. 2241c.)