## UNITED STATES v. FISCHER.

### No. L–6203.

District Court, E. D. New York.

Oct. 21, 1936.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith and William S. Perlman, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for the United States.

William J. McArthur, of New York City (Sunshine Ulman, of New York City, of counsel), for defendant.

BYERS, District Judge.

This is an action at common law to recover a deficiency of income taxes said to have been payable by Richard F. Fischer, deceased, for the years 1920 and 1921. The decedent died in June of 1922, and the defendant above named was appointed administrator c. t. a. by the surrogate of Nassau county on September 20, 1922.

On March 22, 1934, a summons in this action was served upon the defendant, upon which there was indorsed a brief statement that the action is to recover $5,467.74 income taxes duly assessed by the Commissioner of Internal Revenue, and certified to the collector for the First District, against the decedent and payable by the defendant under section 3467, Rev.St. (31 U.S.C.A. § 192). There was a notice that, upon default, judgment would be taken for the said sum with interest and costs.

It appears from the files that this summons was issued on March 5, 1934, by the clerk of this court, and dated on that day.

There are two motions before the court:

One by the plaintiff for an order amending the summons and notice of ap-

pearance by changing the name "Dieterich D. Fischer" to "Dieterich P. Fischer," and permitting the plaintiff to serve and file its complaint, and for such other relief etc. That motion is opposed.

The defendant makes a cross-motion for an order dismissing the action because of the failure and default of the plaintiff to serve a copy of the complaint pursuant to the written demand therefor, and for the unreasonable neglect of the plaintiff to proceed in the action, and for want of prosecution, both pursuant to sections 181 and 257 of the Civil Practice Act of New York, and rule 28 of the General Rules of this court, and for such other, etc., relief. That cross-motion is opposed.

The facts as gleaned from the motion papers, stated chronologically, are as follows:

The decedent filed his individual income tax return for the year 1920, and disclosed a tax liability of $6,784.32, of which all but $1,985.19 was paid. As stated, he died in June of 1922.

October 10, 1925, the defendant, as administrator, filed a claim for abatement of the said balance unpaid, which resulted in a reaudit of the tax liabilities of the decedent for the years 1920 and 1921, which was said to disclose deficiencies for those years in the sums of $2,484.23 and $998.32, respectively, or a total of $3,482.55.

April 30, 1926, the defendant was notified that the claim for abatement was rejected, and that on March 12 and 15, 1926, assessments against the estate in the last-mentioned sums had been made.

On November 24, 1925, the defendant had executed a waiver of the statute of limitations for the years 1920 and 1921, extending the time of assessment to December 31, 1926, which means that the last-mentioned assessments were timely.

As of March 28, 1926, demand was made upon the defendant for the amounts of said deficiency assessments, which was not complied with.

March 12 and 15, 1932, were the last respective dates for the commencement of actions to collect these sums.

About two months prior to the last-named dates, or on January 16, 1932, the defendant submitted an offer in compromise in the sum of $500 in settlement of the said additional assessments, which contained the following waiver of limitation: "The taxpayer hereby expressly waives

* * * 2. the benefit of any Statute of Limitations affecting the collection of the liability sought to be compromised, and in the event of the rejection of the offer, expressly consents to the extension of any Statute of Limitations affecting the collection of the liability sought to be compromised by the period of time (not to exceed two years) elapsed between the date of the filing of this offer and the date on which the final action thereon is taken."

The effect of this waiver was to interpose a suspension of the statute which on January 16, 1932, would have become operative after the lapse of 56 and 59 days, respectively, and those periods were available to the government after action had been taken upon the compromise offer, if the legal situation was unaffected by other events.

On January 10, 1934, the offer was rejected, and the government then had until March 6 and 9, 1934, respectively to bring suit upon the two said claims, unless the relations of the parties were affected by other matters.

As stated, the summons was issued on March 5, 1934, but was not served until March 22, 1934.

Delivery of the summons to the marshal for service was made upon March 6, 1934, which was exactly 56 days after January 10, 1934, and that was sufficient to avoid the statute of limitations. See U. S. v. Northern Finance Corporation (C.C.A.) 16 F.(2d) 998; U. S. v. Scudder (D.C.) 2 F.(2d) 632; New York Civil Practice Act, § 17.

This is so because personal service was made within the period prescribed in the last-mentioned statute.

This conclusion involves the assumption that the suit for $5,467.74, according to the indorsement on the summons, was actually brought to recover the two items of alleged tax deficiency of $2,484.23 and $998.32, which were the subject of the compromise offer (as stated in the moving affidavit) to secure consideration of which the waiver was entered into which has been quoted.

Actually, there is no such statement in the indorsement on the summons, and only by inference can it be read into the moving affidavit; there is no direct averment that action was begun to recover the amounts in question. The language is: "On March

5, 1934 a summons was filed to protect the plaintiff against the operation of the period fixed by the statute, and extended by the Administrator when he submitted his said offer of compromise." Then follows a quotation from the indorsement on the summons. For all that appears in that, the action may have been brought for some other alleged tax deficiency not related to the items in question.

The reference in the moving affidavit to the "said offer of compromise" is clear enough, and it is possible to ferret out an oblique intention to suggest that the action was in fact brought to collect these items, but the disparity between the total of the assessments and the amount stated in the summons to have "been duly assessed by the Commissioner of Internal Revenue" discloses a hiatus not explained in the moving papers.

Obviously, if the amount stated in the summons is unrelated to the assessments in question, the statute of limitations has intervened, and it would be an idle thing to grant the motion for leave to serve the complaint.

Following the service of the summons, a notice of appearance (in the usual form containing a demand respecting the service of papers) was filed, and there the matter rested for over two years; on March 20, 1936, the case appeared on the dismissal calendar, under rule 28 of this court, and the plaintiff applied for trial October 7, 1936.

The United States Attorney then notified the defendant's attorney that, unless an answer were served and filed within ten days, the cause would be noticed for inquest.

Of course it is impossible to see how the defendant could have been in default for failing to answer a non-existent complaint.

No proposed complaint was annexed to the motion papers. The state court cases are clear as to the necessity for making the proposed pleading a part of the motion papers when it is sought to secure relief from a default in pleading.

If the motion were to be denied for this particular procedural lapse, it would be renewed in all probability on more complete papers. There has been handed to the court, with the motion papers, a carbon copy of an unverified paper which is attached to a notice dated September 23rd (over a month later than the order to show cause upon which the motion is based) addressed to the defendant's attorney, in which the paper is referred to as the proposed complaint.

It is necessary now to refer to other circumstances:

On February 4, 1932, the administrator signed a "Tax Collection Waiver," Form 900, in which it was agreed between him and the Commissioner of Internal Revenue that the $2,484.23 item above referred to "may be collected (together with interest penalties etc.) from said party of the first part by distraint or by a proceeding in court begun at any time prior to December 31, 1933."

On February 5, 1932, a similar waiver was signed with respect to the said $998.-32.

Standing alone, these papers would seem to limit the government's right to bring suit to December 30, 1933.

They must have been so construed by the Collector of Internal Revenue, for on September 15, 1933, he wrote to secure additional waivers which would extend the time until December 31, 1934, but none were granted by the administrator.

The question is whether these two last-mentioned waivers had any effect upon the government's time to bring suit, which 17 days earlier had been enlarged (there being then 56 and 59 days remaining as has been said) by an indefinite period which would not exceed a duration of two years.

It is interesting to consider why the waivers second in point of time were entered into at all. If they must be now disregarded as having had no necessary place in the relations between the government and the taxpayer, the infirmity was congenital. If that is true, why should the effort have been made to prolong the suspension of the statute, by supplementing those waivers for an additional year, as was unsuccessfully attempted on September 15, 1933?

It will be seen that the government had left less than two months in which to institute suit, when the compromise offer and the waiver accompanying it of January 16, 1932, were filed. If that offer had been declined by February 2, 1932, suit would have been necessary prior to April 1st of that year. But, by arranging on February 4th for an extension of almost 23 months, the government was

sure of that period of time within which it could reject the compromise and bring suit as well. In other words, an indefinite period was exchanged for a definite period, which may have been advantageous to the government from the standpoint of administering the Income Tax Law.

Because it did not function within the period of the latest waivers, should it now be permitted to disregard them and have recourse to the earlier one?

Opinions may well differ as to the correct answer to be given to this question.

■ The view presently held is that on February 4 and 5, 1932, the government stipulated itself into an engagement to bring suit by December 31, 1933, as a substitute for the then existing arrangement, which new engagement might well have been deemed by it to be more advantageous to the government than the one of January 16, 1932. In other words, the detriment suffered by the taxpayer on February 4 and 5, 1932, was a suspension of the running of the statute for a definite period of time which might be longer than the period which would necessarily result from the execution of the first waiver.

To that engagement the government should be held as a matter of good faith, although, as the fruit of its own delay, it has lost the advantage which it might have gained, had it rejected the compromise promptly.

This means that this action was started too late, by over two months, to bring the government within the stipulated extension of the statutory period for bringing suit.

This ground is sufficient to support a denial of the plaintiff's motion.

■ If the foregoing is incorrectly reasoned, there remains to consider the defendant's cross-motion to dismiss for failure to proceed with the action.

That the claim is stale, sufficiently appears from the recital of the facts.

That the government has been dilatory in waiting for over two years and a half to prepare a complaint, seems to be plain.

That the court is justified in clearing its docket of stale and stagnant litigation necessarily follows from the provisions of rule 28. It may be doubted if anything whatever would have happened to this case even now, had it not been placed on the calendar automatically for dismissal, in March of 1936.

These reflections favor the defendant's cross-motion.

The court may not, however, grant the latter merely because the defendant administrator would have difficulty in meeting the claim on the merits. It was his duty to pay his decedent's debts, and to take all reasonable steps to ascertain what they were, in the due course of administration.

On the whole showing, however, it is felt that, unless the provisions of section 181 of the Civil Practice Act of New York are to be disregarded by this court in an action at law to recover income taxes, the defendant's motion should be granted in the exercise of what is thought to be the court's discretion.

Accordingly, the plaintiff's motion will be denied, and the defendant's cross-motion will be granted.

Settle one order.