## SIMMONS v. WESTOVER.
### No. 5517.

District Court, S. D. California, Central Division.
Feb. 26, 1948.

Latham & Watkins, by Henry C. Diehl, all of Los Angeles, Cal., for plaintiff.

James M. Carter, U. S. Atty., E. H. Mitchell and George M. Bryant, Asst. U. S. Attys., and Eugene Harpole and Loren P. Oakes, Sp. Attys., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

WEINBERGER, District Judge.

The jurisdiction of this court is invoked pursuant to Section 24(20) of the Judicial Code, as amended, 28 U.S.C.A. § 41(20), for the recovery of Federal income taxes which plaintiff alleges were erroneously and illegally collected from him for the calendar year 1925 together with interest in the total amount of $3,159.27.

Stipulations of facts were entered into between the parties; the case was tried on such stipulations and the testimony of the plaintiff. Briefs have been filed, and the case submitted for decision. We are indebted to counsel for their industrious presentation of the points of law involved herein. Our independent research has disclosed no authority of importance other than that included in their exhaustive briefs and written argument.

The uncontroverted and pertinent facts, as disclosed by the stipulations, exhibits attached thereto, and testimony are as follows:

The taxes herein involved are conceded by the parties to have been properly assessed.

As of November 4, 1929, the balance due was the sum of $3,472.06. After notice and demand the Collector issued a warrant of distraint on December 17, 1929, and filed a notice of lien on December 19, 1929.

From December 31, 1929 to August 15, 1933, plaintiff made payments in sums varying between $75.00 and $250.00, totalling $2216.88. The balance of $1255.18, plus interest, is the amount in controversy.

On August 1, 1932, plaintiff executed an "Offer in Compromise" on Treasury Department form 656, and this offer was filed with the Collector of Internal Revenue at Los Angeles, California, on August 15, 1932. Such printed form included a waiver of the benefit of any statute of limitations affecting the collection of the liability sought to be compromised and consented to the extension of any statute of limitations affecting the collection of the liability by the period of time (not to exceed two years) elapsed between the date of filing said offer and the date on which final action should be taken thereon. Attached to said offer was a letter from the taxpayer to which we shall hereinafter refer, a financial statement of the taxpayer, and the Collector's Recommendation.

The waiver was filed at the request of the Collector of Internal Revenue, and was accepted in writing by the Commissioner; the offer was rejected on October 18, 1932.

On July 5, 1933, plaintiff executed a tax collection waiver wherein the taxpayer agreed that the tax might be collected by distraint or by a proceeding in court "begun at any time." Such waiver was filed at the request of the Collector of Internal Revenue and was accepted in writing by the Commissioner; it was not filed in connection with any offer of compromise, and no compromise offer was pending on July 5, 1933. We shall hereinafter refer to this waiver as the second or unlimited waiver.

On May 6, 1936, plaintiff executed an "Offer in Compromise" on Treasury Department Form 656, and this offer was filed with the Collector of Internal Revenue at Los Angeles, California, on May 21, 1936. Such printed form included a waiver of the benefit of any statute of limitations affecting the collection of the liability sought to be compromised and consented to the suspension of the running of the statutory period of limitations on collection for the period during which the offer might be pending and for one year thereafter. Attached to said offer was a financial statement signed by the taxpayer under oath. The waiver, to which we shall hereinafter refer as the third or limited waiver, was filed at the request of the Collector of Internal Revenue, and was accepted in writing by the Commissioner. The offer was rejected August 9, 1938.

At the time the last mentioned offer was forwarded to the Commisioner by the Collector, the latter attached to it a copy of the second or unlimited waiver hereinbefore mentioned.

Subsequent to August 9, 1938, no offer in compromise from the plaintiff was pending or under consideration by the Bureau of Internal Revenue, and from that date until October 9, 1945, plaintiff had no correspondence or conferences with the government concerning the tax involved herein, and to plaintiff's knowledge no attempts were made during said period to collect said tax.

On October 9, 1945, the Collector made demand upon the plaintiff for payment of the tax liability involved herein, and on November 14, 1945, taxpayer paid said liability, together with a fee of fifty cents for the release of the lien created as heretofore mentioned.

A claim for refund of the amount paid was filed, and after more than six months during which no action was taken by the Collector with respect to said claim, this action was brought.

The parties have agreed that the only issue before the court is whether the collection of the tax was barred by the statute of limitations, and that the answer to this question depends upon the effect of the second and third waivers given by the taxpayer.

Plaintiff points out in his opening brief that if no waivers had been executed, collection of the tax would have been barred six years after assessment, or on October 19, 1935; that the first waiver extended this period for two months and three days, or until December 22, 1935; that if the second waiver had not been executed, collection would have been barred on December 22, 1935; that the third waiver (assuming the second to have been effective until the filing of the third) extended the statutory period for collection by three years, two months and nineteen days, or until March 13, 1939; that in order for the defendant to prevail, the second waiver must be held to have been effective not only for the period from December 22, 1935 to May 21, 1936, but also from March 13, 1939 until November 14, 1945, the latter period amounting to nearly seven years.

Plaintiff advances three reasons why the second or unlimited waiver was not in force at the time the tax was collected:

1. The said waiver was invalid from the start and the statute of limitations expired in 1935.

2. The said waiver was good only for a reasonable time, which had expired long before collection in 1945.

3. The third or limited waiver superseded the second or unlimited waiver and established a period of time which expired in 1939.

Plaintiff devotes little argument to his contention that the unlimited waiver was invalid from the beginning, his theory in this regard being that because Section 276 (c), 26 U.S.C.A. Int.Rev.Code, provides that the tax must be collected within six years after it is assessed or prior to the expiration of any period for collection agreed upon, a definite *period* must be stated in a collection waiver, and that the language of the unlimited waiver involved herein did not come within the provisions of the statute. He cites as authority Bouvier's definition of "period" and also quotes the definition of the word as given by Funk and Wagnalls Practical Standard Dictionary.

Defendant replies to this contention with the statement that plaintiff has conceded that Section 276(c), 26 U.S.C.A. Int.Rev. Code, applies only to taxable years beginning after December 31, 1938, and that the taxable year 1925 is governed by Section 278(d) of the Revenue Act of 1924, 26 U.S. C.A. Int.Rev.Acts, page 60. Defendant further points out that at the time the waiver was executed, there was no statute in effect providing in what manner, or for what period the statute of limitations for collection of taxes might be waived.

Defendant cites Cunningham Sheep & Land Co. (1927), 7 B.T.A. 652, (page 655,) wherein the Board ruled: "The position of counsel is that the consent of September 1, 1923, is indefinite in time and is therefore of no effect under the Act, which, it is said by counsel, contemplated an intention that the consent should contain a statement of a 'particular period' during which the assessment might be made. In our opinion the Act does not have the effect of making void such consents as we are here considering. While a consent fixing a definite date for the expiration of the period in which

assessment might be made may be desirable to remove uncertainty, there is nothing in the statute which requires that the expiration of the period be related to a definite date."

■ Plaintiff cites no reported case holding an unlimited waiver invalid because no definite period is fixed, and we find no portion of the statutes cited by either party in their respective briefs which we deem effective to make void the second or unlimited waiver we are here considering.

We shall consider next plaintiff's contention that the third or limited waiver superseded the second or unlimited waiver and established a period of time which expired in 1939.

Plaintiff proposes a rule of construction, "It is a well settled principle of income tax law that doubts as to a waiver's effectiveness must be resolved against the government." In support, he cites two Board of Tax Appeals cases,—D. J. Gay v. Commissioner, 31 B.T.A. 580 and Union Shipbuilding Co. v. Commissioner, 43 B.T.A. 1143. Both of these cases deal with the authority of a person to execute a waiver on behalf of a dissolved corporation. Those cases, and the cases cited therein, offer no parallel to the matter before us and are of no assistance in determining the issues here raised.

Defendant argues against the principle offered by plaintiff, and cites Clifton Mfg. Co. v. United States, D.C., 3 F.Supp. 508, and W. P. Brown & Sons Lumber Co. v. Commissioner, 6 Cir., 38 F.2d 425, as authority that statutes imposing limitations upon action by the United States are to be construed in favor of the government. This principle is enunciated in E. I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788, and in United States v. Whited & Wheless, Ltd., 246 U.S. 552, 38 S.Ct. 367, 62 L.Ed. 879, while in United States v. Updyke, 281 U.S. 489, 496, 50 S.Ct. 367, 369, 74 L.Ed. 984, we find the rule given "which requires taxing acts, including provisions of limitations embodied therein, to be construed liberally in favor of the taxpayer."

In United States v. Havner, 8 Cir., 101 F.2d 161, 165, Judge Sanborn of the Eighth Circuit observed, when discussing Section 276(c), 26 U.S.C.A. Int.Rev.Code: "* * * since there is no ambiguity in the language of the section with which we are concerned, there is no room for construction."

■ We find no ambiguity in the Section above mentioned, and see no necessity for construction.

Plaintiff calls attention to the fact that when the Commissioner accepted the third waiver, he had knowledge that the second, or unlimited waiver, was already on file. This may be assumed, because on Exhibit D-2, it is noted by the Collector that other waivers had been filed, and a copy of the second or unlimited waiver was attached to the offer in compromise which accompanied the second waiver in the Commissioner's file. Plaintiff argues that, when, notwithstanding his knowledge that there was an unlimited waiver on file, the Commissioner accepted the third, or limited, waiver, the Commissioner intended the third or limited waiver to supersede the second or unlimited waiver. Plaintiff cites Atlantic Mills of Rhode Island v. United States, 1933, 3 F.Supp. 699, 78 Ct.Cl. 219, with the statement that a waiver is not effective until signed by the Commissioner. This question is not before us, as all the waivers herein involved were signed by the Commissioner.

Plaintiff next cites Helvering v. Ethel D. Co., 1934, 63 App.D.C. 157, 70 F.2d 761, 762, a case decided by the Court of Appeals of the District of Columbia, upon a petition of the Commissioner for review of a decision of the Board of Tax Appeals. A deficiency had been determined against a corporation, but the tax had not been assessed, when an unlimited waiver was filed. The Board found as a fact that a second waiver was requested immediately upon receipt of the first, and the Board also found that both the taxpayer and the Commissioner intended that the second, or limited, waiver should abrogate the first or unlimited waiver. The Court in its opinion stated, 63 App.D.C. 158, 70 F.2d 762: "The point in the case in confined to the single issue whether the Board was correct in holding that the making and acceptance of the second waiver abrogated

the first. The answer, as we think, depends upon the intention of the parties at the time of the event in question."

The Court then proceeded to review the evidence to ascertain if the same sustained requested immediately upon receipt of the findings that the second waiver was the first and was intended to be substituted for the first.

The Court agreed that the first mentioned finding was sustained by the evidence introduced regarding the dates of the waivers and the correspondence intervening between such dates.

In considering the evidence which justified the finding on intent, the Court stressed these facts:

The second, or limited, waiver was requested immediately after receipt of the first, and enclosed a form of waiver different than the first.

The taxpayer executed the waiver, and at the same time called attention to the fact that it had already executed a different one.

The Court found (63 App.D.C. 159, 70 F.2d page 763): "The answer of the taxpayer is consistent with the finding of the Board that in signing the second waiver it acquiesced in the request of the Commissioner because it understood the first was not satisfactory and that the second was intended to replace it."

As further bearing upon the intention of the parties, the Court mentioned that a few months preceding the correspondence the Commissioner had by a departmental ruling limited all unlimited waivers then on file to a definite date and that thereafter it had been the practice of the Bureau in the request for waivers from taxpayers to limit the time of the waiver to the period of one year. Also, a new form of waiver was adopted and substituted for the old form. The unlimited waiver first signed by the taxpayer was on an old and obsolete form. In addition, the Court stated (63 App.D.C. 159, 70 F.2d page 763): "There was doubt whether it was not terminable by the taxpayer on notice, and likewise doubt whether it would terminate without notice after a reasonable time, and it referred to statutes some of

which had been repealed. It may very well be, as the Board found, that these reasons impelled the request for the second waiver, and that they likewise indicate the purpose of the parties in executing it, and in this view we should have to affirm the Board's decision."

The Court continued: "But in addition to what has just been said, it is fair to point out that, without regard to the motive inducing the request for the second waiver, it is undeniable that, when it was returned by the taxpayer and received by the Commissioner, the first waiver had been received and filed. If the Commissioner was satisfied that it conformed to the requirements of the law and rules in relation to waivers and that it was effective to extend indefinitely the time of making the assessment, it was obvious that the second waiver added nothing to what the government already had. Notwithstanding this, the evidence shows the second waiver was accepted and agreed to by the Commissioner. The Board has found as a fact that in this respect the Commissioner intended that it should be substituted for the unlimited waiver, and, since both waivers covered the same subject-matter but were inconsistent with one another in relation to the time element, the rule with relation to agreements between the same parties concerning the same subject-matter is applicable. In such circumstances, it has invariably been decided that the later rather than the earlier writing will be held to be the agreement between the parties on the subject." (70 F.2d page 764.)

"Nor can there be any doubt of the inconsistency of the two waivers. The first was unlimited. The second required the government to make the assessment prior to the end of the calendar year in which it was executed. In such circumstances it has been held that the provisions of the first clearly inconsistent with the provisions of the later one will be superseded; the inconsistent provisions of the first yielding to those of the second."

In the concluding paragraph of its opinion, the Court cited Greylock Mills v. Commissioner; 2 Cir., 31 F.2d 655, 658, and observed that while it need not decide

the question of whether a waiver would fall of itself after a reasonable time, it was admitted that the taxpayer should have the right to terminate such a waiver by notice.

"* * * we regard the case here as involving only a question of fact, which, in turn, has been definitely found by the Board against the Commissioner, and which we find there is evidence to sustain." 63 App.D.C. p. 160, 70 F.2d p. 764.

Plaintiff also cites Farmers Union State Exchange v. Commissioner, 30 B.T.A. 1051. There the statute began to run on June 16, 1919; on January 15, 1923, the taxpayer executed an unlimited waiver; then on June 9, 1924, the taxpayer executed a limited waiver. The Board announced the rule that "An unlimited waiver does not suspend the running of the statute forever, but only for a reasonable time or until the termination by either party upon reasonable notice." The Board held that under the circumstances, to hold that the first waiver was still in effect after the execution of the second waiver would be the equivalent of "brushing aside" the meaning of the second waiver. In addition, the Board pointed out that the execution of the second waiver, before the first had become effective, was sufficient to constitute a reasonable notice that the first waiver was terminated.

Plaintiff in his reply brief stresses the contention that if the government had no intention that the limited waiver should supersede the unlimited waiver its act of accepting the latter waiver was meaningless. Plaintiff cites Stange v. United States, 282 U.S. 270, 277, 51 S.Ct. 145, 148, 75 L.Ed. 335, and quotes Judge Brandeis' concluding sentence in his opinion in this case, "It must be assumed that an effective and not a futile act was intended."

On the question of whether the limited or third waiver superseded the second or unlimited waiver, defendant Collector cites United States v. Fischer, 2 Cir., 1937, 93 F.2d 488, a decision of the Second Circuit reversing the District Court's opinion reported at D.C., 16 F.Supp. 743.

In the Fischer case, according to the District Court's opinion, the taxes involved were those for the years 1920 and 1921. March 12 and 15, 1926, assessments were made. March 28, 1926, the Collector made demand upon defendant for payment. In its opinion the District Court stated that March 12 and 15, 1932, were the last respective dates for the commencement of actions to collect said taxes. On January 16, 1932, defendant submitted an offer in compromise wherein he consented to the extension of the statute of limitations by the period of time not to exceed two years, elapsed between the filing of the offer and the date on which the final action should be taken. The District Court stated (16 F.Supp. page 744): "The effect of this waiver was to interpose a suspension of the statute which on January 16, 1932, would have become operative after the lapse of 56 and 59 days, respectively, and those periods were available to the government after action had been taken upon the compromise offer, if the legal situation was unaffected by other events."

Continuing its summary of the facts, the District Court observed that on February 4, 1932, the taxpayer signed a waiver wherein it was agreed that one tax item might be collected by distraint or by a proceeding begun at any time prior to December 31, 1933, and on February 5, 1932, a similar waiver was executed with reference to the remaining item. The District Court stated (16 F.Supp. page 745):

"Standing alone, these papers would seem to limit the government's right to bring suit to December 30, 1933.

"They must have been so construed by the Collector of Internal Revenue, for on September 15, 1933, he wrote to secure additional waivers which would extend the time until December 31, 1934, but none were granted by the administrator.

"The question is whether these two last-mentioned waivers had any effect upon the government's time to bring suit, which 17 days earlier had been enlarged (there being then 56 and 59 days remaining as has been said) by an indefinite period which would not exceed a duration of two years.

"It is interesting to consider why the waivers second in point of time were en-

448

tered into at all. If they must be now disregarded as having had no necessary place in the relations between the government and the taxpayer, the infirmity was congenital. If that is true, why should the effort have been made to prolong the suspension of the statute, by supplementing those waivers for an additional year, as was unsuccessfully attempted on September 15, 1933?

"It will be seen that the government had left less than two months in which to institute suit, when the compromise offer and the waiver accompanying it of January 16, 1932, were filed. If that offer had been declined by February 2, 1932, suit would have been necessary prior to April 1st of that year. But, by arranging on February 4th for an extension of almost 23 months, the government was sure of that period of time within which it could reject the compromise and bring suit as well. In other words, an indefinite period was exchanged for a definite period, which may have been advantageous to the government from the standpoint of administering the Income Tax Law."

The Circuit Court, in its opinion reversing the District Court mentioned that the lower court had come to the conclusion that the suit was barred, and stated (93 F.2d page 489): "We think that in so doing an erroneous conception of the effect of the first waiver was entertained. The defendant obtained consideration of his compromise offer by agreeing that the statute of limitations should be extended as therein provided. This effectively tolled the statute for the period up to final action on the offer with a two-year limitation. It was not a contract. Aiken v. Burnet, 282 U.S. 277, 51 S.Ct. 148, 75 L. Ed. 339. It was but a voluntary unilateral waiver of a defense. Stange v. United States, 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335. Nor were the subsequent waivers to December 31, 1933, contracts. The extension already in effect was, consequently, not reduced by additional unilateral waivers, since the government relinquished no rights by accepting them. As final action on the offer of compromise was not taken until after the fixed date of the additional waivers had passed, the

parties were simply left as they would have been had they not been executed at all."

In Atlantic Mills of Rhode Island v. United States, 3 F.Supp. 699, certiorari denied 291 U.S. 676, 54 S.Ct. 526, 78 L. Ed. 1064, a case cited by plaintiff on a different point, we note the Court looked to the language of a limited waiver to see whether or not by its terms it could be effective as a notice of termination of an unlimited waiver. The limited waiver was not accepted by the Commissioner, but taxpayer contended that, nevertheless, it operated as a notice. A portion of the opinion of the Court of Claims reads (3 F. Supp. page 703):

"The document relied upon by plaintiff in support of these contentions, executed on February 9, 1923, is not susceptible of the construction that it was a notice to the Commissioner that the waivers theretofore duly executed and filed with the Commissioner and approved and signed by him February 9, 1923, would terminate on December 31, 1923.

"By its plain terms this document was clearly intended as a consent in writing by the taxpayer and the Commissioner with respect to 1917, and it was executed and filed with the Commissioner with that purpose in mind and with the view that it would be approved and signed by the Commissioner as a waiver contemplated by the statute rather than as a notice that the consents theretofore filed and approved would terminate and become ineffective after December 31, 1923. The language of the document shows that it was intended as a waiver rather than as a notice * * *."

There is nothing in the language of the third or limited waiver which could lead us to believe that it was intended as a notice of termination of the unlimited waiver. Nor are we required, if such were not the purpose of the third or limited waiver, "to brush aside the meaning of the later waiver" within the language of Farmers Union State Exchange v. Commissioner, 30 B.T.A. 1051; nor, are we required, if such were not the purpose of said waiver, to assume that by requesting such waiver, a futile act was intended to be accom-

plished. On the contrary, it is logical to assume that when the Commissioner requested the third waiver, he intended to secure a fixed period within which he might consider the compromise offer and investigate the financial status of the taxpayer, during which period, in the event the taxpayer filed notice of termination of the unlimited waiver, the Commissioner would not be left without a waiver.

We therefore hold that the second or unlimited waiver was not terminated by the giving of the third or limited waiver.

Plaintiff further maintains that a waiver which is not limited as to duration is valid only for a reasonable time, and calls attention to the fact that the elapsed time from the date of filing of the second or unlimited waiver to the date of collection of the tax amounts to twelve years, four months and nine days during the last seven years, three months and five days of which time there were no proceedings of any sort had or pending between the plaintiff and the government; that more than a reasonable length of time had elapsed and the waiver was therefore no longer in effect at the time collection was made.

In support of such theory, plaintiff cites Herman Frost v. Commissioner, 23 B.T.A. 411, decided in 1931, and Nathan Loeser v. Commissioner, 27 B.T.A. 601, decided in 1933.

In the Frost case, the member rendering the opinion stated that the Board had theretofore held that where a waiver was filed which provided for determination, assessment and collection irrespective of any period of limitations, the Commissioner had a reasonable time within which to act. (Citing Cunningham Sheep & Land Co., 7 B.T.A. 652; Greylock Mills, 9 B.T.A. 1281, affirmed 2 Cir., 31 F.2d 655; William S. Doig, Inc., 13 B.T.A. 256; and Corn Products Refining Co., 22 B.T.A. 605.) It was further mentioned that a claim for abatement had been filed, and that a very confused state of affairs existed with reference to the liability of the parties concerned on account of the dissolution of the corporation. The deficiencies were assessed in January 1924, the waiver filed in 1924, and petitioner was advised of his liability in January 1927. The Board held that "in view of the record" the lapsed time was not unreasonable and that collection was not barred by the statute.

In the Nathan Loeser case, supra the member who rendered the opinion stated therein (27 B.T.A. p. 604):

"We have frequently held that an unlimited waiver permits the Commissioner a reasonable time in which to act. Cunningham Sheep & Land Co., 7 B.T.A. 652; Greylock Mills., 9 B.T.A. 1281; affirmed 2 Cir., 31 F.2d 655, certiorari denied 280 U.S. 566, 50 S.Ct. 25, 74 L.Ed. 619; William S. Doig, Inc., 13 B.T.A. 256; Herman Frost, 23 B.T.A. 411.

"What is a reasonable time is not to be determined abstractly or solely by reference to the calendar. It depends on all the circumambient facts of the situation. * * In the instant case, judged solely by the calendar, a very considerable time elapsed between the signing of the waiver and the issuance of the notice of deficiency. But, viewed in the light of all the facts, each being related directly or indirectly to the other, we do not believe it can properly be said that respondent failed to act within a reasonable time. * * *

"The waiver in question was requested, executed and received only because of the controversy relating to the taxable status of the corporation. It specifically refers to the matter as did the forwarding letter. The action of both the petitioner and the corporation in filing claims for refund shows that they were continuously aware of the uncertainty of the outcome and sought to protect themselves by filing such claims. In order to avoid a multiplicity of proceedings the respondent refrained from taking action as to the 1920 tax until the identical issue should be decided by the Board. Under such circumstances, we are of the opinion that the respondent acted within a reasonable time."

The Nathan Loeser case, as the Frost case, previously hereinabove mentioned, involved the determination of a liability. The waiver was dated September 25, 1925. The notice of deficiency was issued July 17, 1931.

It is interesting to note that both the Frost and the Loeser opinions include in their citations of authorities on the point that an unlimited waiver permits the Commissioner a reasonable time to act, the case of Greylock Mills, 9 B.T.A. 1281, affirmed 2 Cir., 31 F.2d 655.

In Cunningham Sheep & Land Co., 7 B.T.A. 652, 655, we find an expression of the reasoning upon which the Board based its "reasonable time" theory: "The courts are frequently confronted with contracts which fail to fix the period within which they are to be performed. Courts are reluctant to declare any contract void for uncertainty if the intent of the parties can be determined. In those cases where the uncertainty relates to the time of performance of the contract, the courts have found little difficulty in arriving at the conclusion that a reasonable time is to be allowed. There are some variations of this rule, one of which permits one of the parties in certain circumstances to give notice to the other of the time within which performance should be made, reasonable notice being given. It appears to us that the rules laid down by the courts for construction of such agreements are properly to be applied to the consent entered into between the Commissioner and this taxpayer and that under the consent of September 1, 1923, the Commissioner was given a reasonable time after the date of its execution in which to determine and assess the deficiency."

The defendant Collector disagrees with plaintiff's contention that the waiver fell after the lapse of a reasonable time, and cites Greylock Mills v. Commissioner, 2 Cir., 1929, 31 F.2d 655, certiorari denied 280 U.S. 566, 50 S.Ct. 25, 74 L.Ed. 619.

The Greylock case concerned the statute of limitations with reference to the assessment of a deficiency and the Board of Tax Appeals held that the Commissioner acted within a reasonable time after the execution of an unlimited waiver, a period of three years having elapsed.

The Circuit Court affirmed the Board of Tax Appeals decision (31 F.2d 655), stating that it might rest its affirmance upon the same ground as that of the Board, that the Commissioner acted within a reason-able time. At page 658: "But there is also another ground equally fatal to appellant's contention. If waivers which are in terms unlimited are to be limited at all, we think they should expire only after the taxpayer gives notice to the Commissioner that he will regard the waiver as at an end after a reasonable time, say three or four months, from the date of such notice. In such a rule there is no harshness to either party; on the contrary, it seems to us the most reasonable one. An analogy may perhaps be found in the case of contracts for the sale of land, where time does not ordinarily become of the essence unless expressly so stated, until notice is given by one party and an opportunity afforded to the other to act. (citing cases). In the instant case, no such notice was given to the Commissioner, and we think the waiver remained outstanding so that he was entitled to act at his leasure."

In Greylock Mills v. White, 1 Cir., 63 F.2d 866, the First Circuit in its opinion at page 868 stated: "The waiver in this case, being unlimited in duration, extended the period for the assessment and collection of the 1918 tax at least a reasonable time beyond the then statutory limit of June 15, 1924. (citing cases). Whether it continued the period indefinitely until either the taxpayer or the commissioner gave notice of the termination of the waiver, it is not necessary to decide, although it might be so terminated at any time on reasonable notice given by either."

At page 868, the First Circuit commented upon the opinion of the Second Circuit heretofore mentioned and reported at 32 F.2d 655: "The Circuit Court of Appeals held that the waiver in this case was effective in extending the time for both assessment and collection of the 1918 tax beyond the limitation fixed in the prior statutes, and expressed the opinion that it extended the time for collection of a tax assessed prior to the date of its execution and until the taxpayer gave notice of a termination of the waiver. On the last proposition we express no opinion."

Defendant Collector also cites Big Four Oil & Gas Co. v. Heiner, 3 Cir., 1932, 57 F.2d 29, a decision of the Third Circuit Court of Appeals, wherein there was a

delay of four and a half years between assessment and collection of deficiency income tax because of taxpayer's claim for credit. The Court stated (57 F.2d page 30):

"The only question therefore, to be decided is whether or not the unlimited waiver filed March 2, 1923, authorized the collection by distraint in November, 1928, of the tax assessed on March 15, 1924.

"If such a waiver does require the Commissioner to act within a reasonable time, the evidence was sufficient to allow the court below to say that the period between the assessment, March 15, 1924, and the collection of the deficiency, November 8, 1928, was not unreasonable, because shortly after the assessment the appellant filed a claim for credit which was duly considered and rejected prior to June 24, 1927, when the second notice and demand were issued. * * * The delay in collecting the tax must have been caused by the time required to consider the appellant's claim for credit. It cannot object to a delay that it caused."

The Circuit Court then cited the case of Greylock Mills v. Commissioner, 2 Cir., 31 F.2d 655, and quoted from the portion of the opinion in that case wherein it was held that an unlimited waiver remains outstanding until notice is given of its termination. After such quotation, the Court in the Big Four Oil & Gas Co. v. Heiner case said (57 F.2d page 31): "This rule seems reasonable, and the present case falls within its scope."

In Warner Sugar Refining Co., 4 B.T.A. 5, 11, the Board considered an unlimited waiver, stating: "No notice was ever served upon the Commissioner by the taxpayer prior to the assessment of the amount here in controversy as to when it would regard the provisions of the waiver as having been fully complied with by both parties and become inoperative."

In F. L. Bateman v. Commissioner, 34 B.T.A. 351, 358, the Board held:

"Under all the facts and circumstances here present, the delay in mailing the notice of deficiency, about 4¼ years after the expiration of the statutory period for assessment had expired, is not so unreasonable as to invalidate the waiver for 1920.

"Furthermore, it has been held that waivers unlimited as to time expire only upon reasonable notice to that effect given by the taxpayer. (Citing Greylock Mills v. Commissioner [2 Cir.] 31 F.2d 655.) No notice was given here."

Defendant directs attention to the fact that in none of the Board of Tax Appeals cases cited by plaintiff did the Board conclude the Commissioner had failed to act within a reasonable time, and that therefore it was not, in any of the cases cited, necessary for the Board to pass upon the question whether an unlimited waiver survived beyond a reasonable time and until notice of its revocation was given by the taxpayer. In view of our conclusions hereinafter expressed we, also, find it unnecessary to pass upon that portion of plaintiff's contentions.

The plaintiff points out in his brief that there elapsed a period of seven years between the rejection of the last offer in compromise and the collection of the tax on November 14, 1945: "Thus for a period of more than seven years the government chose to remain inactive regarding the collection of these taxes * * * this period of inactivity is so patently unreasonable that the court should, as a matter of law find that the government failed to act within a reasonable time."

We note that in the letter from the taxpayer which accompanied the first offer in compromise disclosed that the taxpayer held a position, the salary for which, even after successive cuts, amounted to at least $720.00 a month. In the letter the taxpayer stated that his position was the result of contacts made with his employers before his financial troubles multiplied, and he indicated that were his financial status known his employment would be shortly terminated; he detailed his expenses, and presented the sad picture of a man, formerly affluent, who had been caught in the crash, who had been forced to borrow on his insurance to support his family; that his insurance would shortly be in default, and he had been pronounced uninsurable. His financial statement showed an excess of liabilities over assets of the sum of $32,482.73. It was a year after writing this letter, and after he had been informed that

the Collector would not accept his offer in compromise, and that he should promptly take up the matter of his liability with the Collector, that the taxpayer executed the second, or unlimited waiver.

We note also that in the offer of compromise filed in 1936, the taxpayer stated he had been without regular income and that he had subsisted largely upon borrowed money; he offered $100.00 in compromise of his liability, and stated he had been obliged to borrow that sum; his financial statement showed liabilities in excess of assets in the sum of $28,698.35.

Again, on August 9, 1938, the government rejected his offer in compromise, and again suggested that he promptly take up the matter of his liability with the Collector of Internal Revenue at Los Angeles.

In Nathan Loeser v. Commissioner, 27 B.T.A. 601, cited by plaintiff, it is stated that what constitutes a reasonable time is not to be determined abstractly or solely by reference to the calendar; that it should be viewed in the light of all the facts of the situation. In each of the cases cited by counsel wherein it is considered whether the elapsed time is reasonable, the facts and circumstances are different. None of the cases to which our attention has been directed provide us with a measuring stick for "reasonable time" in the matter before us, because, in most if not all of those cases, the period considered was one during which the Commissioner had failed to assess, or to finally determine after a controversy, the amount owed by the taxpayer. Here the amount had been determined; that it was due had been conceded by the taxpayer. There was no failure of the government to act which was occasioning the taxpayer anxiety, inconvenience, or uncertainty.

We believe that in determining what constitutes a reasonable time in cases such as this, the court should consider not only the facts and circumstances present in each case, but also the objects of statutes of limitations in connection with such particular facts and circumstances.

In Bell v. Morrison, 1 Pet. 351, 360, 361, 26 U.S. 351, 360, 361, 7 L.Ed. 174, Justice Story commented: " * * * It is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt from lapse of time, but to afford security against stale demands, after the true state of the transactions may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses. It has a manifest tendency to produce speedy settlements of accounts, and to suppress those perjuries which may rise up at a distance of time, and baffle every honest effort to counteract or overcome them. * * * The statute of limitations was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of discharge may be lost."

The unlimited waiver provided clearly that the tax might be collected "at any time." There is no doubt that the taxpayer gave such waiver in the hope that the government might refrain from drastic collection procedure which would imperil taxpayer's means of livelihood, and that the taxpayer might be given grace to enable him to pay his debt without the necessity of such procedure.

" * * * definite unambiguous statements in written waivers, made for the purpose of obtaining action favorable to the maker and on which such action is obtained, must be given effect." S. S. Pierce Co. v. United States, 1 Cir., 93 F.2d 599, at page 601.

We assume that the taxpayer, when he gave the unlimited waiver, intended to pay the debt to the government which he conceded to be due. That the government withheld action, over a long period, and made final demand at a time when taxpayer was able to discharge his just liability, should not be deemed unreasonable. As was said in Shambaugh v. Scofield, 5 Cir., 132 F.2d 345, page 347: "Having had full advantage of the waivers, the taxpayers should not now be heard to repudiate them unless they were clearly inoperative."

For the reasons herein stated, we conclude that at the time of collection of the tax, the second or unlimited waiver was operative.