**GREYLOCK MILLS v. WHITE, Collector of Internal Revenue.**

No. 2751.

Circuit Court of Appeals, First Circuit.

March 9, 1933.

Sanford Robinson, of New York City (Robinson & Henson, of New York City, on the brief), for appellant.

Henry L. Young, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The Greylock Mills, a Massachusetts corporation, located at North Adams, had, prior to 1918, been accustomed to file its income, war profits, and excess profits tax on the basis of a calendar year. On March 15, 1919, it filed its return for the full calendar year 1918, reporting an estimated tax of $266,000, on which it paid the sum of $100,000.

After the passage of the Revenue Act of 1918, the revised Treasury Regulations required returns to be made on a basis of the fiscal year. When a change was made from a calendar year to a fiscal year, section 226 of the Revenue Act of 1918 (40 Stat. 1075), which was not finally enacted until February 24, 1919, required a return to be made from the end of the last calendar year covered by a taxpayer's return to the beginning of the next fiscal year. In other words, it required this appellant to file a return for the period from December 31, 1917, to July 1, 1918.

To comply with this requirement, the appellant computed its income, war profits, and excess profits tax for the fiscal year from June 30, 1917, to July 1, 1918, and took one-half as the tax for the period from December 31, 1917, to July 1, 1918, which, according to its computations, disclosed a tax of $78,005.98. But see decision of court in Arthur C. Harvey Co. v. Malley (C. C. A.) 60 F.(2d) 97; Id. (C. C. A.) 61 F.(2d) 565. The Commissioner of Internal Revenue on its return assessed its tax for this period at $156,011.96.

In September, 1919, the appellant filed a claim for a refund of $21,994.02, or the difference between the $100,000 which it had already paid on its 1918 tax based on the calendar year, and the $78,005.98 which it claimed was its total tax for the period from December 31, 1917, to July 1, 1918. This claim was rejected on August 31, 1926. In December, 1919, it also filed a claim for the abatement of all that portion of the tax assessed by the commissioner on its return for the six months' period in question in excess of the $100,000 paid by the appellant on its 1918 tax computed on the calendar year basis, or $56,011.96. This claim was not formally rejected until December 20, 1929.

In February, 1923, the commissioner notified the taxpayer that an examination of its books and records disclosed a tax for the half year period in question considerably in excess of the original assessment; and if the taxpayer desired to question the determination of any deficiency tax, it should sign and execute a waiver, a form of which was enclosed, and which was unlimited as to time for the assessment and collection of any tax for the years 1917, 1918 and 1919. The taxpayer on February 6, 1923, executed the waiver as requested, by which it consented to "the determination of assessment and collection of the amount of income, excess profits and war profits taxes due under any return made by or on behalf of the said corporation for the years 1917–1920, * * * irrespective of any period of limitation." (Italics supplied.)

While the claim for abatement was still pending, to relieve himself of liability under section 3218, R. S. (26 USCA § 147), a warrant of distraint was issued by the collector against the taxpayer on August 13, 1925, and demand made on it for the amount of $56,011.96 on September 3, 1925, and again on January 13, 1926. The taxpayer refused to pay the amount on the ground that the collection was barred by the limitation in the Revenue Act of 1921, § 250 (d) (42 Stat. 264), and that the waiver did not apply to taxes assessed prior to the date of its execution. Following this denial, the appellee, as an interdepartmental matter, reported this amount as uncollectible to the commissioner, who, on June 30, 1926, listed it as abated as uncollectible. This temporarily relieved the collector from liability under section 3218, R. S. It is agreed, however, that this did not discharge the taxpayer's liability for the tax.

Article 1303, Treasury Regulation 65, provides that:

"The Collector may also present claims for the abatement of taxes not erroneously assessed but found to be uncollectible. * * * It is the duty of the Collector to use the same diligence to collect the tax after it has been abated as uncollectible as before the abatement. Collectors should therefore keep a record of all taxes thus credited and of the persons from whom they are due and should enforce payment whenever it is in their power to do so."

On August 27, 1925, the Commissioner of Internal Revenue mailed to the taxpayer a "thirty day letter," stating that its books of account and records disclosed a deficiency for each of the years 1917, 1918 and 1919. On December 18, 1925, the commissioner sent to the taxpayer by mail a "sixty day letter," giving notice of deficiency taxes for 1917 and 1919, and for the six months' period in question, with an accompanying schedule showing that for the period from December 31, 1917, to July 1, 1918, the correct tax for said period was $170,580.63, resulting in a deficiency tax in addition to the sum originally assessed by the commissioner of $14,568.67.

■ The waiver in this case, being unlimited in duration, extended the period for the assessment and collection of the 1918 tax at least a reasonable time beyond the then statutory limit of June 15, 1924. Section 250 (d), chap. 136, Revenue Act of 1921 (42 Stat. 264, 265); A. Cellers et al. v. Commissioner, 16 B. T. A. 411; William S. Doig, Inc., v. Commissioner, 13 B. T. A. 256; Pictorial Printing Co. v. Commissioner (C. C. A.) 38 F.(2d) 563. Whether it continued the period indefinitely until either the taxpayer or the commissioner gave notice of the termination of the waiver, it is not necessary to decide, although it might be so terminated at any time on reasonable notice given by either.

■ The revenue officers were at the time the waiver was given engaged in examining the books and records of the taxpayer preparatory to determining the correct tax for the six months' period of 1918. Before the first demand was made in August, 1925, for the payment of the balance alleged to be due on the original assessment, the "thirty day letter" had already been sent, notifying the taxpayer that the books and accounts of the taxpayer showed a deficiency for each of the years 1917, 1918, and 1919; and before the second demand was made in January, 1926, the "sixty day letter" had been sent, notifying the taxpayer of an assessment of a deficiency tax for those years; and before the balance claimed to be due on the original assessment for 1918 had been listed as uncollectible, the taxpayer had, in February, 1926, appealed from the commissioner's decision to the Board of Tax Appeals. There can be no doubt, we think, that the proceedings for determining the deficiency taxes for 1917, 1918, and 1919 were instituted within a reasonable time after the expiration of the statutory limitation for assessment and collection of the 1918 taxes.

From this time until November, 1929, the determination of the correct tax of the taxpayer for the six months' period of 1918 was pending before the Board of Tax Appeals and in the courts.

■ Where it is claimed that the original assessment as well as the deficiency assessment is excessive, and a claim is pending for an abatement of a portion of the original assessment, we think that it does not constitute unreasonable delay on the part of the government, under an indeterminate waiver of the period for collection, to await the determination of the courts as to whether any amount or what amount is due.

The taxpayer's petition to the Board of Tax Appeals in February, 1926, was based in part on alleged erroneous assessment of taxes for the years 1917, 1918, and 1919, and in part on the ground that the statutory limitation for assessment for further taxes for each of these years had expired, and that the commissioner failed to sign the waiver, or give notice to the taxpayer that its waiver was accepted, and, therefore, it did not extend the time for assessment or collection of any deficiency tax for either of these years.

The Board of Tax Appeals on January 14, 1928, announced its decision and held that the waiver was effective to extend the time for assessing additional taxes for 1918 and 1919, and that the commissioner acted within a reasonable time in filing notice of deficiencies for those years. The board thereupon ordered the petition restored to its general calendar for a hearing on the merits as to the amount of the deficiency for the six months' period in 1918. See 9 B. T. A. 1281.

To adjust the question of the deficiency for 1918, the General Counsel for the Bureau of Internal Revenue on April 3, 1928, proposed to counsel for the taxpayer that the deficiency for the 1918 period be assessed at $9,878.13, instead of $14,568.67, as stated in the "sixty day letter."

This was assented to by counsel for the taxpayer, with the reservation of the right of appeal on the issue of the validity and effect of the waiver. On April 14, 1928, the Board of Tax Appeals, in accordance with the stipulation, entered an order of redetermination to the effect that there was a deficiency in the taxes assessed for the first half year period of 1918 of $9,878.13, together with interest of $1,298.77. The amount of the deficiency tax with interest was paid on May 22, 1928, in compliance with section 277, chap. 852 of the Revenue Act of 1928 (26 USCA § 2277).

Under its reservation in its assent to the deficiency tax, the taxpayer, on June 5, 1928, entered in the Circuit Court of Appeals for the Second Circuit an appeal from the decision of the Board of Tax Appeals, on which appeal the issue was by agreement limited to the validity and effect of the waiver; and on April 1, 1929, the Circuit Court of Appeals affirmed the order of the Board of Tax Appeals. 31 F.(2d) 655. On October 21, 1929, a writ of certiorari was denied by the Supreme Court. Greylock Mills v. Lucas, 280 U. S. 566, 50 S. Ct. 25, 74 L. Ed. 619.

The Circuit Court of Appeals held that the waiver in this case was effective in extending the time for both assessment and collection of the 1918 tax beyond the limitation

fixed in the prior statutes, and expressed the opinion that it extended the time for collection of a tax assessed prior to the date of its execution and until the taxpayer gave notice of a termination of the waiver. On the last proposition we express no opinion.

On July 5, 1929, following the decision of the Circuit Court of Appeals, which was the first decision of a court settling the correct amount of the tax for the six months' period in 1918, the appellee notified the taxpayer that there was an unpaid balance due from it for the year 1918, amounting with interest, after applying certain credits, to $69,432.84. From this the taxpayer appealed to the Board of Tax Appeals. The board, on November 29, 1929, dismissed the petition for lack of jurisdiction (see 18 B. T. A. 75). On September 13, 1929, the commissioner again by interdepartmental order, directed the appellee to reverse the order of abatement of plaintiff's tax for the half year period of 1918 as uncollectible, which had been so marked in 1926, and restore it to the collectible list, and authorized the application of certain credits to the unpaid balance. This action by the commissioner again subjected the collector to the obligations imposed by section 3218, R. S. That official then proceeded to collect the balance found to be due with interest. ·

After the application by the collector of credits arising out of overpayments for other years, the taxpayer in December, 1929, under threat of distraint, paid the balance in cash. It now seeks to recover in this action the sums so paid and credited, amounting to the sum of $78,689.65.

The petitioner originally claimed that the correct tax for the six months' period from December 31, 1917, to July 1, 1918, was shown by its return filed June 15, 1919, viz., $78,005.98, and that the commissioner either erroneously adopted the total tax shown by its return for the fiscal year from June 30, 1917, to July 1, 1918, as the tax for the first six months of 1918, or, without any other information than what was contained in the return of the taxpayer or hearing, unlawfully assessed the tax for the six months' period from December 31, 1917, to July 1, 1918, as $156,011.96. However, when the commissioner gave notice of a deficiency assessment in December, 1923, which the commissioner found to be $14,568.67, he furnished the taxpayer with a schedule showing by computation based on its books and records that the tax for the six months' period in question was $170,580.63, or $14,568.67 more than the tax it had originally assessed, whether erroneously assessed or not.

In view of the schedule filed with the notice of the deficiency taxes, the taxpayer must have understood that the commissioner had found from a recomputation that its correct tax for the six months' period in 1918 was $170,580.63, instead of either $78,005.98, or $156,011.96. It made no difference to the taxpayer whether the deficiency was $14,568.-67 on a basis of an original assessment of $156,011.96, or $92,574.65 on a basis of an original assessment of $78,005.98. Its correct tax, including the deficiency tax, for the period in question was no more and no less in either case. Since the commissioner expressly found the deficiency to be $14,568.67, it must have been based on an original assessment of $156,011.96.

It is now admitted that the effect of the decision of the Circuit Court of Appeals was to determine that the waiver was a valid waiver and that the correct amount of the tax for the six months' period ending June 30, 1918, was $165,890.09, which was based on the original assessment of $156,011.96, plus the deficiency tax of $9,878.13 agreed upon. The only amount paid up to the time of application of the credits in 1929 was $100,000 plus the amount of the deficiency tax with interest, leaving a balance of $56,011.96, which with interest amounted on December 9, 1929, to $78,689.65.

The taxpayer, therefore, must rest its case here on the proposition that, if the waiver of 1923 was a valid waiver and extended the time for collection of the original tax assessed in August, 1919, it had expired long before August, 1929, when the first credits were made. If it is right in this contention, the application of the credits and collections of the balance of the tax in the fall of 1929 constituted under sections 607 and 609 of the Revenue Act of 1928 (26 USCA §§ 2607, 2609) overpayments and can now be recovered, it having made its claim for a refund within the time allowed by the statute; but neither these sections nor section 611 of the act (26 USCA § 2611) have any application where a valid waiver still existed.

When the waiver was executed, a petition both for an abatement and refund was pending before the commissioner. In February, 1926, the taxpayer entered its appeal from the deficiency assessment with the Board of Tax Appeals, and this was not determined until May, 1928. Its appeal to the Circuit Court of Appeals begun in June, 1928, under which the amount of its tax for the six months' period and the validity and effect of the waiver was finally settled, was not decided until April, 1929.

Under these circumstances, until the correct tax was finally determined by the courts, we do not think the collector should be charged with unreasonable delay because he did not, prior to such determination, force the collection of a disputed tax by distraint. Graham & Foster v. Goodcell, 282 U. S. 409, 421, 422, 51 S. Ct. 186, 75 L. Ed. 415; Treasury Regulation 45, art. 1032; Regulation 62, art. 1032. After the decision of the Circuit Court of Appeals for the Second Circuit in April, 1929, we think the collector then proceeded within a reasonable time to notify the taxpayer of the balance due on the 1918 tax, and to apply credits thereon; and following the denial of the writ of certiorari by the Supreme Court in October, 1929, and the dismissal of the taxpayer's second appeal to the Board of Tax Appeals in November, 1929 (18 B. T. A. 75), the collector in December, 1929, collected the balance then due. The taxpayer, having executed an unlimited waiver, is in no position to complain that the collector did not force collection of a disputed tax until it was settled by the administrative board or the courts as to the correct amount due.

The judgment of the District Court is affirmed.